Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEMETRIO JUAN-SEBASTIAN,<br><br>Defendant. | NO. A04-0028 CR (JKS)<br><br>**DEMETRIO JUAN-SEBASTIAN'S POST-SENTENCING MEMORANDUM** |

**I.     Introduction.**

Demetrio Juan-Sebastian submits his response to this court's order at Docket No. 24. Mr. Juan-Sebastian asks the court to vacate his sentence and to conduct a new sentencing hearing in accordance with the principles announced in *United States v. Booker*, 125 S.Ct. 738 (2005).

**II.     Background.**

### The Sentence

Demetrio Juan-Sebastian pleaded guilty to and was convicted of unlawful reentry after deportation in violation of 8 U.S.C. § 1326. The court imposed a 39-month sentence under the then mandatory sentencing guideline scheme. The presentence report correctly established Mr. Juan-Sebastian's guideline sentencing range to be 41 to 51 months. The court granted Mr. Juan-Sebastian a 60-day downward departure pursuant to *United States v. Martinez*, 77 F.3d 332, 336 (9th Cir. 1996). The purpose of this departure was to credit Mr. Juan- Sebastian with 60 days that he spent in custody prior to the initiation of federal custody.

### The Appeal

Mr. Juan-Sebastian appealed his sentence to the United States Court of Appeals for the Ninth Circuit. In the interim, the United States Supreme Court declared the sentencing guidelines advisory. Accordingly, the Ninth Circuit remanded Mr. Juan-Sebastian's case pursuant to *United States v. Ameline*, 409 F.3d 1073, 1084 (9th Cir. 2005) (*en banc*) because it could not reliably determine from the record whether the sentence would have been materially different had the district court known that the guidelines were advisory.

### The Remand

The panel effectively acknowledged that Mr. Juan-Sebastian's Sixth Amendment error claim met the first two prongs of the plain error test. The question presented on remand is whether the Sixth Amendment error affected Mr. Juan-Sebastian's substantial rights. *Id.* This requires Mr. Juan Sebastian to "demonstrate a reasonable probability that he would have received

a different sentence had the district judge known that the sentencing guidelines were advisory." *See generally United States v. Ameline*, 409 F.3d at 1078.

### This Court's Order At Docket No. 24

At Docker No. 24, this court invited simultaneous post-sentencing memoranda from the parties addressing three questions.

1. Is there anything about the facts of Mr. Juan-Sebastian's case that make *Booker/Fanfan* and the earlier *Blakely* decision inapplicable to his case?

2. Assuming the answer to question (1) is no, then to what extent and under what circumstances does *Booker/Fanfan* authorize a district court to impose a sentence that varies from the otherwise applicable guideline sentence?

3. If the facts and circumstances of Mr. Juan-Sebastian's case would allow this court discretion to deviate from the Guideline sentence, should the Court exercise that discretion to vacate the judgment, hold a further sentencing hearing, and modify the sentence?

This memorandum represents Mr. Juan-Sebastian's responses to the court's three questions.

**III.   Mr. Juan-Sebastian's Response To The Court's Order At Docket No. 24.**

   **A.   The Principles Announced In *United States v. Booker* and *Blakely v. Washington* Are Directly Applicable To Mr. Juan-Sebastian's Sentencing.**

The principles announced in *United States v. Booker* and in *Blakely v. Washington* are fully applicable to the sentence imposed for unlawful entry after deportation. There is nothing about the facts of Mr. Juan-Sebastian's situation that would render these cases inapplicable to this sentence.

**The Unlawful Entry Indictment**

The indictment charged Mr. Juan-Sebastian with unlawful entry after deportation in violation of 8 U.S.C. § 1326. The indictment did not allege and the government did not prove beyond a reasonable doubt that Mr. Juan-Sebastian had been convicted of a prior aggravated felony. However, the presentence report computed his total adjusted offense level to be offense level 21. [PSR ¶ 33] Sixteen of these levels resulted from the presentence report's determination that Mr. Juan-Sebastian had received a two-year sentence following a 1991 conviction for possession of a controlled substance for sale. [PSR ¶ 24] The court had no discretion to ignore or to otherwise discount this automatic sixteen-level upward adjustment under the then mandatory sentencing guideline scheme. *See* U.S.S.G. § 2L1.2(b)(1)(A).

Consistent with then exiting sentencing law, this court accepted the proposed sixteen-level upward adjustment using the preponderance of the evidence standard. Judicial fact finding using a preponderance of the evidence to resolve this question directly implicates the merits majority holding in *Booker* and the holding in *Blakely*.[1] For all these reasons, the principles announced in *Booker* and *Blakely* have direct application to the sentence imposed in this case.

---

[1] Mr. Juan-Sebastian is aware of that in *Almendarez-Torres*, 523 U.S. 224 (1998) the Supreme Court ruled that the existence of a prior aggravated felony was a "sentencing factor" rather than an "element" of the offense, and that it did not have to be charged in the indictment or proved to a jury beyond a reasonable doubt. This holding does not adversely impact this court's discretion on an *Ameline* remand to impose a reduced sentence under an advisory sentencing guideline scheme.

**B.     Post-*Booker* Sentencing Requires The Court In Every Case To Strike A Careful Balance Between The Competing Factors Identified By Congress In 18 U.S.C. § 3553(a) – The Guidelines Represent An Important Factor In The Sentencing Calculus – But Not The Only Factor And Not Always The Main Factor.**

**1.     Introduction.**

The second question posed by the court is by far the most challenging in the post-*Booker* debate. The court asks "what extent and under what circumstances does *Booker/Fanfan* authorize the district court to impose a sentence that varies from the otherwise applicable guideline sentence?" Docket No. 95 at 2.

Mr. Juan-Sebastian's view is that *post-Booker* sentencing in Federal Court must become more flexible. If it does not, the "tail" in many cases will continue to "wag the dog" and the Sixth Amendment concerns identified in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in *Blakely v. Washington*, 542 U.S. 296 (2004), and in *United States v. Booker*, 125 S.Ct. 738 (2005) will become hidden from view and then lost.

The sentencing process has always involved a balancing of conflicting and competing sentencing factors. Each factor cannot be given equal weight in every case. The post-*Booker* era centers on a parsimony principle and requires the court to choose a sentence "sufficient, but not greater than necessary" to achieve the purposes identified in 18 U.S.C. § 3553(a)(2). The statute directs that achieving those purposes begins with an evaluation of "nature and circumstances of the offense and the history and characteristics of the defendant[.]"

The decision rendering the guidelines advisory provides the district courts with greatly-increased sentencing discretion. However, attached to this increased sentencing discretion is a greatly-increased responsibility to explain individual sentencing decisions.

> From the start, the Guidelines were intended to advance both the goals of uniformity and proportionality. *See* U.S.S.G. ch. I, pt. A, intro. cmt. 3. Congress did not seek to impose a regime with absolutely uniform sentences across the country. It sought to eliminate only "unwarranted" disparities, while enabling judges to consider those factors that cannot be tallied in advance, but that may create "warranted" disparities in sentencing.

*United States v. Jaber*, 362 F.Supp.2d 365, 373 (D.Mass. 2005). In Mr. Juan-Sebastian's view, this process requires the court to include the guidelines in its sentencing calculus but not to slavishly follow them without regard to consideration of those factors in 18 U.S.C. § 3553(a).

Each case will be different and the balance struck will necessarily reflect those differences. In the end, sentencing decisions will be judged by the appellate review process for reasonableness and that process will test and provide definition for trial court sentencing decisions.

### 2. The Goals Of Sentencing Are Necessarily Competing, Will Sometimes Conflict, And Cannot Always Be Reconciled With Precision.

Sentencing has always been an individualized process. Associate Justice Anthony M. Kennedy, writing for the Court in *Koon v. United States*, 518 U.S. 81, 113 (1996), penned these words when the federal sentencing guidelines reigned supreme.

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

The 18 U.S.C. § 3553(a) factors Congress directed courts to consider when fashioning sentences are often in conflict and sometimes cannot be easily reconciled. Judge Adelman alluded to the conflicting factors inherent in the sentencing process in *United States v. Ranum*, 353 F.Supp.2d 984 (E.D. Wis. 2005).

> [U]nder § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history.

*Id.* at 986.

As Judge Adelman explained, there are cases where the defendant's educational, training, treatment, or medical needs are best served if the offender is allowed to remain in the community. *Id.* Likewise, earlier community placement may be warranted for a particular offender where restitution is an important component of an individualized sentence. *Id.*

In the end, it is the role of the sentencing judge to strike a reasoned balance between these competing factors and then provide an explanation for his or her decision that can be reviewed for reasonableness. Again, it is the appellate review process that will test and provide definition for trial court sentencing decisions.

> **3.    Judge Cassell's Approach To The Post-*Booker* Sentencing Process Improperly Discounts The Sixth Amendment Concerns Of The Merits Majority.**

The Court's order at Docket No. 95 asks for discussion of *United States v. Wilson*, 350 F.Supp.2d. 910, *on reh'g*, 355 F.Supp.2d 365 (D. Utah 2005). Judge Cassell advocates that a post-*Booker* sentencing court must give "heavy weight" to the sentencing guidelines and should

exercise discretion to sentence outside the guidelines "only in unusual cases," and then for "clearly identified and persuasive reasons." *Id.* at 925.

The danger inherent in the "heavy weight" concept is that it approaches too closely the systems held unconstitutional in *Blakely v. Washington* and in the merits majority in *United States v. Booker.* Judge Cassell's proposal addresses the Sixth Amendment problem by hiding it. It makes no sense to acknowledge the Sixth Amendment infirmities of a mandatory sentencing guideline system and then replace it with a sentencing guideline system that is advisory in name only.

    **4.**    **The Case For Strict Adherence To The Sentencing Guidelines Post-*Booker* Is Overstated.**

The case for strict adherence to the sentencing guidelines post-*Booker* is overstated. Those endorsing this approach argue that the Sentencing Commission has devoted years of study aimed at promoting uniform sentencing and eliminating sentencing disparity. Mr. Juan-Sebastian respectfully disagrees. Principled criticism of the argument for strict adherence to the sentencing guidelines *post-Booker* should include consideration of the original purpose of the Sentencing Commission; the link between the factors established in § 3553(a) and the sentencing guidelines ultimately promulgated; whether the Sentencing Commission has fulfilled its purpose; and the inherent difficult challenges presented in any sentencing process.

Judge Gertner makes several compelling points in her analysis of the role of sentencing guidelines post-*Booker*. *United States v. Jaber*, 362 F.Supp.2d at 372-376. First, she notes that the drafters of the sentencing guidelines recognized "the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially

relevant to a sentencing decision." *United States v. Jaber*, 362 F.Supp.2d at 372, *quoting* U.S.S.G. ch. I, pt. A, intro. cmt. 4(b). Fairness in individual cases, she argues, means more than rote application of the guidelines. *Id.*

Second, she points out that over the years the sentencing commission has made no direct effort to implement the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Indeed the first sentencing commission "noted that choosing among purposes would be 'difficult,' that the selection of purposes was often 'irrelevant,' and that, therefore, it would simply not identify its purposes at all (or would claim that *all* purposes were relevant for all cases)." *Id.* at 374 (citation omitted) (emphasis in original).

Third, she points out that the implementing legislation directed the commission to develop guidelines that "reflect, to the extent practical, advancement in knowledge of human behavior as it relates to the criminal justice process," *Id.* at 374, *quoting*, 28 U.S.C. § 991(b)(2), and to "develop means of measuring the degree to which sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing set forth in section 3553(a)(2)." However, instead of performing such studies, the commission simply "took average national sentences for a given offense, and then increased them, without explanation, [and without] scientific study." *Id.* Because the Sentencing Commission was not subject to the Administrative Procedures Act, it could not be compelled to provide an explanation for the particular guidelines it promulgated. *Id.*

Fourth, with rare exceptions, Congress has not played an active role in the sentencing formulation process since the inception of the guidelines. *Id.* at 375.

Fifth, public support for rigid adherence to the sentencing guidelines is overstated. "[I]t is not at all clear that the public would agree with mechanistically-derived Guidelines

outcomes, if it had all the information that judge's possess, instead of just sound bytes or incendiary headlines." *Id.* at 375.

Finally, Judge Gertner suggests that the available evidence does not link the decline in the crime rate to increased application of guideline-driven sentencing. *Id.*

In sum, Mr. Juan-Sebastian suggests that the argument for strict adherence to sentencing guidelines in most cases post-*Booker* is overstated.

> **5. When And To What Extent A District Court Should Impose A Sentence That Varies From The Otherwise Applicable Guideline Sentence Will Have To Be Determined On A Case-By-Case Basis Because The Guidelines Are Only One Of The Factors To Be Considered At Sentencing.**

Mr. Juan-Sebastian's answer is that variations from the otherwise applicable guideline sentence will have to be determined on a case-by-case basis because the guidelines are only one of the factors to be considered at sentencing.

Mr. Juan-Sebastian's answer may to a certain degree beg the question.

Sentencing is and always has been an individualized process. Unwarranted disparity in sentencing is to be abhorred. However, warranted disparity that is explained in the record and that is subject to appellate review for reasonableness should be tolerated. Rigid application of the sentencing guidelines in the post-*Booker* era risks Sixth Amendment error and fails to acknowledge the complex realities of the sentencing process. The sentencing guidelines are necessarily incomplete and cannot and should not be considered outcome determinative.

> In the final analysis, the SRA sought to eliminate "unjustified disparity" between "similarly situated offenders." It did not call for *identical* sentences from one end of the country to another. Differences justified by "differences among offenses or offenders" are *warranted* differences. S.Rep. No. 98-225, at 38 (1984),

> *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221-29 ("Sentencing disparities that are not justified by differences among offenses or offenders are unfair both to offenders and to the public.") Differences in treatment of offenders based on identifiable, sustainable standards, spelled out in decisions, statements of reasons, or transcripts, subject to review, or even testing, are not "unwarranted.

*United States v. Jaber*, 362 F.Supp.2d at 376 (emphasis in original).

    **C.**    **This Court Should Exercise Its Discretion To Vacate The Sentence, Hold A Further Sentencing Hearing, And Modify Mr. Juan-Sebastian's Sentence.**

Mr. Juan-Sebastian asks the court to exercise its discretion to vacate his sentence, to hold a further sentencing hearing, and to modify the 39-month sentence imposed. Mr. Juan-Sebastian's sentencing guideline computation was increased by 16 levels under the earlier mandatory sentencing guideline scheme despite the fact that the triggering drug offense was 14 years old.

When evaluating Mr. Juan-Sebastian's request for resentencing, it is helpful to remember the B.O.P. realties that he has confronted and will confront during the course of the service of his sentence. Because he is not a citizen, he will not be afforded the opportunity to participate in the B.O.P. rehabilitative programs. Most importantly, because of his non-citizen status, he will not be permitted to finish his term of imprisonment in a half-way house. In this regard, his status as a non-citizen results in a longer sentence only because of his alienage.

For these reasons, Mr. Juan-Sebastian asks that his sentence be vacated.

**IV.     Conclusion.**

In sum, Mr. Juan-Sebastian answers the court's three questions as follows:

1.      The principles announced in *Booker/Fanfan* and the earlier *Blakely* decision apply to the sentence in this case.

2.      Sentencing is an individualized process which necessarily requires a balancing of inherently conflicting factors. Post-*Booker* sentencing in Federal Court must become more flexible. Sentencing courts now have the added responsibility of weighing all of the § 3553(a) factors, providing a reasoned explanation for the sentences imposed, and allowing the review for reasonableness to test and provide definition to the sentencing process. The arguments for strict adherence to the sentencing guidelines with variances only in the most extraordinary circumstances are overstated and risk the Sixth Amendment error condemned in *Blakely* and *Booker*.

3.      The record in this case suggests a reasonable probability that Mr. Juan-Sebastian's sentence would have been different under an advisory sentencing scheme. This is particularly true given the disparate treatment afforded non-citizens in light of the absence of meaningful rehabilitation programs and their ineligibility for placement at half-way houses at the end of their period of imprisonment.

For all of these reasons, Mr. Juan-Sebastian respectfully requests that the sentence be vacated, that a further sentencing hearing be conducted, and that the sentence be modified.

DATED at Anchorage, Alaska this 17th day of March 2006.

Respectfully submitted,

s/Kevin F. McCoy
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:      907-646-3400
Fax:         907-646-3480
E-Mail:     kevin_mccoy@fd.org

Certification:
I certify that on March 17, 2006,
a copy of *Demetrio Juan-Sebastian's Post-sentencing Memorandum* was served electronically on:

Retta-Rae Randall
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

and a copy was hand delivered to:

U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562

s/Kevin F. McCoy