DEBORAH M. SMITH
Acting United States Attorney

RETTA-RAE RANDALL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:04-cr-0028-JKS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | UNITED STATES' |
| DEMETRIO JUAN-SEBASTIAN, ) | POST-SENTENCING |
| ) | MEMORANDUM |
| Defendant. ) | |
| ) | |

The United States hereby files its post-sentencing memorandum in support of the 39 month sentence originally imposed by the Court on July 1, 2004.  Mr. Juan-Sebastian, an individual with  previous criminal convictions of an aggravated drug felony and an aggravated assault, pled guilty to Unlawful Reentry after Deportation, in violation of Title 8 U.S.C. §§ 1326(a) and (b)(2).   The sentence imposed in 2004

would not have been any different even if the United States Sentencing Guidelines (the "Guidelines") had been advisory at the time of sentencing. Moreover, the Court should continue to impose sentences within the Guideline range absent unusual circumstances that are not present here.

## Background

### Statement of Facts

The defendant was born in Guatemala in 1969 and is a citizen of Guatemala. PSR ¶ 44. The defendant came to the United States in 1986. PSR ¶ 44. The defendant, however, chose to commit various crimes, including a violent assault, possession of a controlled substance for sale, and driving under the influence. PSR ¶¶ 36-38.

Eventually, the defendant was deported back to Guatemala in 1992. PSR ¶¶ 9-10. Undeterred by his first deportation, the defendant returned to the United States, and was again deported back to Guatemala. The defendant's second deportation to Guatemala occurred on September 27, 1995 from Los Angeles, California. PSR ¶¶ 12-13. The defendant then returned the United States, made his way to Alaska, and was arrested in Bethel, Alaska on December 20, 2003 after allegedly stabbing a person. PSR ¶¶ 14, 40. The Bureau of Immigration and Customs Enforcement then took custody of the defendant on February 23, 2004. PSR ¶ 18. The defendant still

did not have permission to return to the United States and is still a citizen of Guatemala.

## Course of the Proceedings

On February 20, 2004, the defendant was indicted in the United States District Court for the District of Alaska for unlawfully entering the United States after deportation in violation of Title 8, United States Code Section 1326(a) and (b)(2). Specifically, the indictment alleged that: (1) the defendant is an alien; (2) the defendant was found in the United States on December 20, 2003 at Bethel, Alaska; (3) the defendant was found after having previously been deported from the United States on September 27, 1995 at Los Angeles, California; and (4) the defendant did not have permission to return to the United States. DOCKET ("DKT.") 1. The defendant entered a plea of guilty to the indictment on April 5, 2004. Ex. 1: 3-18.

On June 30, 2004, the district court sentenced the defendant to 39 months imprisonment and three years supervised release. The district court applied the United States Sentencing Guidelines to determine the defendant's sentence and adopted the Guideline calculations in the PSR. Ex. 1: 35-40. The PSR calculated the defendant's total adjusted offense level as 21 and calculated the defendant's criminal history category as II, resulting in a sentencing range of 41-51 months. PSR ¶ 65. The district court and PSR added a 16 level enhancement to the defendant's offense level,

pursuant to United States Sentencing Guidelines ("USSG") § 2L1.2(b)(1)(A)(I), due to the defendant's prior conviction for a drug trafficking offense. PSR ¶ 24. The defendant did not deny the existence of any of his prior convictions and did not contest that he had a prior conviction for a drug trafficking offense as defined by USSG § 2L1.2(b)(1)(A)(I). See, Ex. 1:19-40. At sentencing, however, the district court departed downward to allow the defendant credit for two months of custody the defendant served while awaiting subsequently dismissed state assault charges prior to the time he was arraigned on the indictment in this case. Ex. 1: 35-36. To reflect this departure, the court calculated the defendant's final offense level and sentencing range on the judgment as a base offense level of 20 and sentencing range of 33-41 months. Ex. 1: 35-36, 48.

On January 13, 2006, the case was remanded for the court to answer the question of whether Juan-Sebastian's sentence would have been materially different had the court known that the Guidelines were advisory. The court then asked for input from the parties. Dkt. 24.

### Statutory Maximum Sentence

Count 1: 20 years, $250,000 fine.

### Argument

The district court enhanced the defendant's sentence under the USSG solely as a result of the defendant's prior conviction for an aggravated felony. As such, the sentence imposed by the defendant did not violate the Sixth Amendment.

Specifically, the district court utilized USSG § 2L1.2(b)(1)(A)(I), which requires a 16 level enhancement for any defendant previously convicted of an aggravated felony. Ex. 1: 77-78, 91; PSR ¶¶ 20-21. Plainly, this enhancement was based on the defendant's prior conviction for a drug trafficking offense, as detailed in the Presentence Report and noted by the District Court during the sentencing hearing. Ex. 1: 35-36, 48; PSR ¶¶ 24, 38. The court in fact raised this issue at sentencing, questioning what impact the Blakely decision would have in Juan-Sebastian's case. Ex. 1: 22-27.

The Supreme Court made clear in Booker that a trial court's determination and consideration of the fact of a prior conviction does not implicate the Sixth Amendment. 125 S.Ct. at 756; see also, Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004); Apprendi v. New Jersey, 530 U.S. 466 (2000). Also, United States v. Velasquez-Reyes, 427 F.3d 1227, 1229 (9th Cir. 2005) rejected the contention that prior convictions must be proved to a jury if not admitted by the defendant and reaffirmed that Almendarez-Torres v. United States, 523 U.S. 224 (1998) has not been overruled.

Here, the defendant never contested the fact or nature of his prior convictions in any proceeding before the district court, even though the PSR provided the defendant with ample notice that the defendant's offense level calculation included a 16 level enhancement pursuant to USSG § 2L1.2(b)(1)(A)(I), for one of the convictions. Accordingly, the district court's application of the 16 level enhancement derived from USSG § 2L1.2(b)(1)(A)(I) did not implicate the Sixth Amendment because the applicability of the enhancement was determined solely from the fact of a prior conviction.

The district court imposed a reasonable sentence that the record makes clear would not have been different even if the district court had not considered the USSG mandatory. As the Supreme Court made clear in <u>Booker</u>, even though the USSG are no longer mandatory, "the district courts . . . must consult those Guidelines and take them into account when sentencing." 125 S.Ct. at 767. That process is exactly what occurred in this case. The district court considered the USSG and determined that the defendant was facing a sentencing range of 41-51 months under the USSG. The district court then chose to exercise its discretion and depart downward to allow the defendant to receive credit for two months the defendant served immediately prior to his arrest by the Bureau of Immigration and Customs Enforcement while awaiting trial on state charges. The state charges were dismissed after the defendant's federal arrest.

Ex. 1: 35-36.  So, despite the district court's assumption that the USSG were mandatory, the district court's error was harmless because the district court imposed a sentence that was otherwise reasonable in that the district court considered the USSG and crafted a sentence tailored to the unique circumstances of this defendant, *i.e.* a sentence that was guided by the USSG while still taking into account the defendant's unique circumstances.

### A. The Court would have imposed the same 39 month sentence if the U.S. Sentencing Guidelines had been advisory.

In reaching its decision to impose 39 months, the Court not only applied the Guidelines, but also effectively reviewed and applied the statutory sentencing factors outlined in 18 U.S.C. § 3553.  Those factors, when considered again today, lead to the same conclusion - a sentence of at least 39 months is appropriate.

The factors the court considered at sentencing, and must consider under Section 3553(a) include:

### (1) the nature and circumstances of the offense and the history and characteristics of the defendant.

As stated above, the court carefully considered the nature and circumstances of this offense as well as the situation of this particular defendant.

**(2) The need for the sentence to imposed to reflect the seriousness of the offense, promote respect fo the law, and to provide just punishment.**

The sentence imposed by the court was commensurate with the sentences given others who committed similar offenses and had the same criminal history.

**(3) The need for the sentence to afford adequate deterrence and to protect the public.**

Juan-Sebastian's history tells us that he has not been deterred in the past and that he will likely re-offend.

Considering all these factors, as the court did, a sentence of 39 months remains appropriate.

**B.    The Court Should Continue to Follow the U.S. Sentencing Guidelines**

In addition to the above, it is the position of the United States that absent highly unusual circumstances the Court should continue to apply and follow the United States Sentencing Guidelines.

In <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed

and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S.Ct. 738, at 757. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to review by the Court of Appeals for "reasonableness." Id. at 767.

In the wake of Booker, this Court must make a correct calculation under the existing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the Court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the

direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct ...."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances. The government therefor supports the opinion in <u>United States v. Wilson</u>, 350 F.Supp.2d 910, (D. Utah, Jan. 13, 2005), which shared this conclusion. In his assessment in <u>Wilson</u>, on the day after <u>Booker</u> was decided, Judge Cassell explained at length the reasons supporting this view. As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress. The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion,

the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 192.

Accordingly, a sentence within the Guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

In the case of Mr. Juan-Sebastian, no unusual circumstances exist which warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court uphold the original Guideline sentence of 39 months imposed in ths case.

**Conclusion**

For all the reasons stated above, the United States supports the original sentence imposed in this case. The factual record in this case is well established. No further

//


//


//

hearing is necessary.

      RESPECTFULLY SUBMITTED this <u>17th</u> day of March, 2006 in Anchorage, Alaska.

                      DEBORAH M. SMITH
                      Acting United States Attorney

                      s/ Retta-Rae Randall
                      Assistant U.S. Attorney
                      Federal Building & U.S. Courthouse
                      222 West Seventh Avenue, #9
                      Anchorage, Alaska  99513-7567
                      Phone: (907) 271-5071
                      Fax: (907) 271-1500
                      E-mail: rettarae.randall@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2006,
a copy of the foregoing  was served
electronically on Kevin McCoy,
and was placed at the front desk of the
USAO for Scott Kelly
U.S. Probation Officer.

s/Retta-Rae Randall