1              UNITED STATES DISTRICT COURT

2              DISTRICT OF ALASKA    **COPY**

3      UNITED STATES OF AMERICA,   )  Case No. A04-0028-CR (JKS)
                         )

4                 Plaintiff,   )  Anchorage, Alaska
                         )  Monday, April 5, 2004

5              vs.            )  10:11 o'clock a.m.
                         )

6      DEMETRIO JUAN-SEBASTIAN,   )  **PROPOSED CHANGE OF PLEA**
                         )  **HEARING**

7                Defendant.   )

8      ——————————————————————————————)

9                **TRANSCRIPT OF PROCEEDINGS**

10         BEFORE THE HONORABLE JAMES K. SINGLETON
          UNITED STATES DISTRICT JUDGE

11     APPEARANCES:

12
    For the Plaintiff:        MARK ROSENBAUM, ESQ.

13                           Assistant U.S. Attorney
                      U.S. Attorney's Office

14                           222 West 7th Avenue, #9
                      Anchorage, Alaska   99513-7567

15                           (907) 271-5071

16     For the Defendant:        KEVIN MCCOY, ESQ.
                      Assistant Federal Public Defender

17                           550 West 7th Avenue, Suite 1600
                      Anchorage, Alaska   99501

18                           (907) 646-3400

19     Probation Officer:        SCOTT KELLEY
                      U.S. Probation Service

20                           222 West 7th Avenue, #48
                      Anchorage, Alaska   99513

21                           (907)271-4109

22     Interpreter:              SHARON SPENCE
                      U.S. Court

23                           312 North Spring Street, Room 541
                      Los Angeles, California   90012

24                           (213) 894-4370

25

1     APPEARANCES (continued):

2     Court Recorder:            LINDA CHRISTENSEN
                                     U.S. District Court

3                                        222 West 7th Avenue, #4
                                       Anchorage, Alaska    99513

4                                        (907) 677-6130

5     Transcription Service:       NODAK ROSE TRANSCRIPTS
                                       P.O. Box 1752

6                                        Bismarck, North Dakota  58502
                                       (701) 391-8861

7

8     Proceedings recorded by electronic sound recording.
    Transcript produced by transcription service.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              ANCHORAGE, ALASKA - MONDAY, APRIL 5, 2004
 2         (Call to Order of the Court at 10:11 a.m.)
 3              THE CLERK:  Please rise.  His Honor the Court, the
 4    United States District Court for the District of Alaska is now
 5    in session, the Honorable James K. Singleton presiding.  Please
 6    be seated.  Your Honor, we have Sharon Spence present
 7    telephonically as Spanish interpreter.
 8              THE COURT:  Thank you, Madam Clerk.  The Court has
 9    before it at this time the matter of United States versus
10    Demetrio Juan-Sebastian, A04-0028 Criminal, and the first order
11    of business will be to swear the Spanish interpreter.  Madam
12    Clerk?
13              THE CLERK:  Yes, Your Honor.  Ma'am, please raise
14    your right hand.
15              THE INTERPRETER:  Yes.
16         (SHARON SPENCE sworn to interpret Spanish into English and
17         English into Spanish)
18              THE CLERK:  Ma'am, for the record, please state your
19    full name, your address, spell your last name, and please give
20    your telephone number.
21              THE INTERPRETER:  Yes.  My name is Sharon,
22    S-H-A-R-O-N, Spence, S-P-E-N-C-E.  My address is 312 North
23    Spring Street, Room 541, Los Angeles, California, 90012.  The
24    phone number of the office is area 213-894-4370.
25              THE CLERK:  Thank you very much.
```

4

1        THE COURT:  Thank you, ma'am.

2        THE INTERPRETER:  Thank you, sir.

3        THE COURT:  Mr. McCoy, there is no plea agreement in

4   this case?

5        MR. MCCOY:  That is correct, Your Honor.

6        THE COURT:  Have the parties had any discussions at

7   all in which any representations have been made to Mr. Juan?

8        MR. MCCOY:  No, sir.

9        MR. ROSENBAUM:  No, Judge.

10       THE COURT:  Okay.  Sir, before the Court can accept a

11  plea from you, I have to ask you a number of questions in order

12  to assure that all of your rights have been protected.  Since I

13  do not know you and I don't know anything about this case, I

14  need to put you under oath to have you swear to tell the truth

15  so I can rely on what you tell me.  Would you -- Madam Clerk,

16  you may swear the witness.

17       THE CLERK:  Thank you.  May I -- may I remain seated?

18       THE COURT:  Yes.

19       THE CLERK:  Sir, please raise your right hand.

20       **DEMETRIO JUAN-SEBASTIAN, DEFENDANT, SWORN**

21       THE CLERK:  Please -- you can put your hand down.

22  Sir, for the record, please state your full name and spell your

23  last name.

24       THE DEFENDANT:  My name is Juan Sebastian.

25  S-E-B-A-S-T-I-A-N.

5

1          THE CLERK:   Thank you, sir.

2          THE COURT:   Thank you, sir.

3                   VOIR DIRE

4  BY THE COURT:

5  Q     How old are you, Mr. Sebastian?

6  A     I'm thirty-five years old.

7  Q     And how far in school did you go, sir?

8  A     I only stayed about three years in my country.

9  Q     I see.  And is your country Mexico?

10  A     No, Guatemala.

11  Q     Guatemala.  Okay.  Do you feel that you read, write and

12  speak the Spanish language fluently?

13  A     Yes.

14  Q     Okay.  How about English?  Do you feel comfortable in

15  English at all?

16  A     I don't understand very much.  I only understand English a

17  little bit.

18  Q     Okay.  Have you ever been treated for any drug or alcohol

19  dependence, sir?

20  A     No.

21  Q     Have you ever been treated for any mental or emotional

22  illness to the best of your knowledge?

23  A     No, sir.

24  Q     Are you under the influence of any drug or alcohol right

25  now?

6

1   A    No, sir.

2   Q    Are you taking any prescription medication of any kind?

3   A    No, sir.

4   Q    Okay.  Are you satisfied that Mr. McCoy has been a good

5   lawyer for you in this case?

6   A    Yes.

7   Q    Do you have any complaints about his representation of

8   your at all?

9   A    No.

10  Q    Has anyone made any promises to you of any kind in order

11  to get you to plead guilty in this case?

12  A    No, I've only talked to my attorney.

13  Q    Okay.  Has anyone attempted to force you to plead in any

14  way, made any threat against you or close friend or relative?

15  A    No, sir.

16  Q    Okay.  Did you understand, sir, that the offense to which

17  you are pleading guilty is a felony offense and that if your

18  plea is accepted, you will be adjudged guilty of that offense

19  and that such adjudication may deprive you of valuable and

20  important civil rights?  Did you understand that?

21  A    Yes, sir.

22  Q    Okay.  Did you understand, sir, that you are charged with

23  the unlawful reentry after having previously been deported, and

24  that the maximum penalty is a term of imprisonment of not more

25  than twenty years, a fine of not more than two hundred fifty

7

1  thousand, or both?  Were those explained to you?

2  A    Yes, sir.

3        THE COURT:  Okay.  What -- are the parties in any

4  agreement as to which category of unlawful reentry Mr.

5  Sebastian falls into, and thus what -- what the actual level of

6  -- of -- whether he'd previously been convicted of a felony and

7  if so, what kind of felony, that kind of thing?

8        MR. ROSENBAUM:  There have been no discussions.  Our

9  -- the discovery provided to the defense indicates that he has

10  been previously convicted of an aggravated drug felony.

11        THE COURT:  Okay.

12        MR. ROSENBAUM:  There's also an aggravated assault

13  prior to that.

14        THE COURT:  All right.  So realistically then, what

15  -- what would he be looking at as a -- as a potential penalty?

16  Assuming for the moment that -- that the Government proves that

17  up?

18        MR. ROSENBAUM:  I haven't calculated it, Judge.

19        THE COURT:  Mr. McCoy?

20        MR. MCCOY:  Your Honor, my estimate is a criminal

21  history category two, a total adjusted offense level of '

22  one assuming full acceptance of responsibil''

23  forty-one to fifty-one months.  That's m_

24        THE COURT:  Very well.

25  BY THE COURT:

8

1  Q    Did you understand, Mr. Sebastian, that at this stage, no

2  one can predict with certainty what your sentence will be or

3  how the sentencing guidelines will affect you?  Mr. Kelley,

4  who's the probation officer, is seated in the first row and he

5  will prepare a presentence report in which he will estimate how

6  the sentencing guidelines affect you, and then you, through Mr.

7  McCoy, and Mr. Rosenbaum will have an opportunity to object to

8  those calculations.  And until the Court rules on the

9  objections, no one can know for certain what your sentence will

10  be.  Did you understand that, sir?

11  A    Yes, sir.

12  Q    Okay.  And that the maximum duration of supervised release

13  is at least two but not more than three years.  Was that

14  explained to you, sir?

15  A    Yes, sir.

16  Q    And there's a special assessment of a hundred dollars that

17  will be imposed as well.  Did you understand that?

18  A    That -- the hundred dollars I don't understand.

19  Q    Very well.  For every federal offense, the Government

20  imposes what is called a special assessment of a hundred

21  dollars per felony and twenty-five dollars per misdemeanor.

22  This offense is a felony, so the special assessment would be

23  one hundred dollars.  Do you understand, sir?

24  A    Oh, that's all right, yes.

25  Q    Okay.  Did you understand, sir, that you have a right to

9

1  plead not guilty to any offense charged against you and to

2  persist in that plea, that you would then have the right to a

3  trial by jury, that at trial you would be presumed to be

4  innocent and the Government would have to prove your guilt

5  beyond a reasonable doubt, and that you would have the right to

6  the assistance of counsel for your defense both at trial and on

7  appeal, you would have the right to see and hear all the

8  witnesses who appear against you and have them cross-examined

9  in your defense, the right on your own part to decline to

10  testify unless you voluntarily elected to do so in your own

11  defense, and the right to the issuance of subpoenas or

12  compulsory process to compel the attendance of witnesses to

13  testify in your defense.  Do you understand that should you

14  decide not to testify or put on any evidence, these facts could

15  not be used against you?  Did you understand, sir, that you had

16  all of those rights?

17  A    Yes, sir.

18  Q    And that you would give up or forfeit those rights if you

19  plead guilty?

20  A    Yes, sir.

21  Q    Okay.  And did you further understand that by entering a

22  plea of guilty, if the plea is accepted by the Court, there

23  will be no trial and you have waived or given up your right to

24  trial as well as those other rights associated with a trial as

25  I have just described them.  Did you understand that, sir?

10

1    A    Yes, sir.

2    Q    Did you understand that in order to prove you guilty of

3    this offense, the Government would have to prove to the

4    satisfaction of a jury beyond reasonable doubt, first, that you

5    are an alien, that you are not a citizen or national of the

6    United States; second, that on September the 27th, 1995, you

7    were deported or removed from the United States without your

8    consent; and third, that you reentered the United States

9    without the consent of the Immigration or Naturalization

10   Service or its successor, the Office of Homeland Security?  Did

11   you understand the Government would have to prove each of those

12   things in order to convict you?

13   A    Yes, sir.

14            THE COURT:  Very well.  Mr. Rosenbaum, what would the

15   Government be prepared to prove if the case went to trial?

16            MR. ROSENBAUM:  May I remain seated, Judge?

17            THE COURT:  Yes, you may.

18            MR. ROSENBAUM:  Judge, the evidence would show that

19   on the -- on -- on or about December 22nd, 2003, the defendant

20   was arrested in Bethel, Alaska, for assault with a deadly

21   weapon.  A records check following his arrest indicated

22   was -- had been deported on September 25t

23   Angeles, California, to guala -- Guatemal

24   show that Mr. Juan-Sebastian has never in

25   authorization for entry into the United St

11

1  United States Attorney General or his successor, the Secretary

2  for Homeland Security.

3  BY THE COURT:

4  Q    Is all of that true, Mr. Sebastian?

5  A    Yes, sir.

6  Q    Okay.  How do you wish to plead to the charges, Mr.

7  Sebastian?  Do you wish to plead guilty or not guilty?

8  A    Yes, guilty.

9        THE COURT:  Okay.  Mr. Rosenbaum, is there any

10  further inquiry that you want the Court to make before I accept

11  or reject the plea?

12        MR. ROSENBAUM:  No, Judge.  You've been quite

13  thorough.

14        THE COURT:  Mr. McCoy, is there any other area of

15  concern to Mr. Sebastian that should be put on the record?  Any

16  particular thing that you wish to assure that you are free to

17  argue on his behalf?

18        MR. MCCOY:  No, Judge.  I think given the fact that

19  there's no plea agreement, we have the range of departure

20  arguments that would ordinarily be allowed, but I don't think

21  there's anything I need to add at this time.

22        THE COURT:  Very well.  The Court is prepared,

23  therefore, to accept Mr. Sebastian's plea and proceed in

24  conformity with the plea agreement.  I find that his com --

25        MR. ROSENBAUM:  There is no plea agreement, Judge.

12

1    THE COURT:  I'm sorry -- proceed in conformity with

2  the law.  I find that Mr. Sebastian is competent, that he has

3  had effective assistance of counsel up to this point, that he

4  has knowingly, intelligently and voluntarily waived his trial

5  rights in order to enter a knowing, intelligent and voluntary

6  plea, which I accept.

7    Mr. Kelley, when -- when would you be ready for

8  sentencing in this case?

9    THE PROBATION OFFICER:  Your Honor, I would request

10  that sentencing be set on or after June 17th of this year.

11    THE COURT:  Very well.  Is that an available week for

12  you, Mr. McCoy?

13    MR. MCCOY:  Yes, sir, it is.

14    MR. ROSENBAUM:  Judge, did I -- did I miss something?

15  Maybe I was thinking of something else.  I didn't think I heard

16  you ask him how he pleads to the charge.

17    MR. MCCOY:  I think he did.

18    THE COURT:  Yeah, I did, and then I asked you after

19  that --

20    MR. ROSENBAUM:  Oh, I'm sorry.

21    THE COURT:  -- if there was anything further you

22  wanted to know.

23    MR. ROSENBAUM:  Sorry.  I wasn't -- I apologize.

24    THE COURT:  Okay.  No, typically -- and Mr. McCoy and

25  Mr. Rosenbaum are both familiar with how I typically proceed --

13

1   I typically ask you if there's anything else before I ask him

2   to plead.  For some reason, I asked him to plead first in this

3   case.

4              MR. ROSENBAUM:  That may be historically what

5   triggered the thought it might not --

6              THE COURT:  Yeah, I'm sure.  Mr. Sebastian, just so

7   there's no concern, how do you wish to plead to the charge of

8   being an alien who returns without permission after having

9   previously been deported?  Do you wish to plead guilty or not

10  guilty?

11             THE DEFENDANT:  Guilty.

12             THE COURT:  Okay.  All right.  We'll -- we'll set

13  this for June 17th at 9:00 o'clock a.m.  And Mr. McCoy, you've

14  answered this question I'm sure a dozen times for me, but I --

15  I just wanted to make sure.  Where you have Spanish-speaking

16  clients and need to explain the pre -- plea -- presentence

17  reports to them, do you still have available to you Spanish-

18  speaking individuals in your office who can go over it and --

19             MR. MCCOY:  Yes, Judge.  We have Arturo Herrera on

20  staff who's -- who's served us very well over the years, and in

21  fact I anticipate meeting with Mr. Kelley when we know what Mr.

22  Herrera's schedule is for the presentence report in the next

23  day or so.  But, you know, if we ever have translation

24  difficulties that we can't solve ourselves, we'd probably come

25  to the Court and ask for help.  We're fine in this one.

14

1    THE COURT:  Very well.  Mr. Sebastian, what Mr. McCoy

2   is saying is that he -- he would assure that he has someone

3   Spanish-speaking who can go over the presentence report with

4   you and make sure you fully understand it.  One of your

5   obligations is to read and understand that presentence report

6   with great care to make sure that you've identified for Mr.

7   McCoy anything that is in the presentence report that is

8   untrue, that in any way criticizes you, accuses you of

9   anything, or disparages you.  It is important that you identify

10  such things so that Mr. McCoy can have them removed from the

11  presentence report.

12    The presentence report is very important because it

13  affects not only the sentence where a person is classified to.

14  So please be very careful and ask lots of questions when Mr.

15  McCoy and his associates discuss the presentence report with

16  you so that you can make sure that there is nothing in there

17  that is untrue, that misrepresents you in any way.

18    As Mr. McCoy indicated, you will be meeting with Mr.

19  Kelley shortly.  You have the right to have Mr. McCoy present

20  and he's indicated that he'll have a Spanish-speaking

21  individual there with him.  It is impor -- that is important.

22  If Mr. McCoy is there, he can answer your questions and help

23  you answer questions put to you by Mr. Kelley, so you should

24  not go to the meeting without assuring that Mr. McCoy will be

25  there and also that he has the assistance that he's indicated

15

1    he will have.  Do you understand, sir?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Very well.  Mr. Rosenbaum, is that

4    anything further at this time?

5              MR. ROSENBAUM:  No, Judge.  Thank you.

6              THE COURT:  Mr. McCoy?

7              MR. MCCOY:  No, Your Honor.  Thank you.

8              THE COURT:  Mr. Kelley?

9              THE PROBATION OFFICER:  No, Judge.

10             THE COURT:  Very well.  We'll stand at ease.

11             THE CLERK:  Your Honor, would you care to vacate the

12   trial set for -- I believe it was April 19?

13             THE COURT:  Any objection?

14             MR. MCCOY:  No, sir.

15             MR. ROSENBAUM:  None, Judge.

16             THE COURT:  Very well.  Add the pretrial conference

17   as well.

18             THE CLERK:  Okay.  Thank you.

19             THE COURT:  Okay.

20             THE CLERK:  This matter is adjourned.  This Court now

21   stands in recess until 11:00 a.m.

22        (Proceedings concluded at 10:29 a.m.)

23

24

25

1

**CERTIFICATE**

2   I certify that the foregoing is a correct transcript from the
    electronic sound recording of the proceedings in the above-
3   entitled matter.

4

5   _Donna K. Chertkow_                    _August 6, 2004_
    Signature of Approved Transcriber              Date

6

7   DONNA K. CHERTKOW
    Typed or Printed Name

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
UNITED STATES DISTRICT COURT

2
DISTRICT OF ALASKA **COPY**

3
UNITED STATES OF AMERICA,   )  Case No. A04-0028-CR (JKS)

                        )

4
              Plaintiff,   )  Anchorage, Alaska

5
                        )  Wednesday, June 30, 2004

          vs.           )  9:08 o'clock a.m.

6
                        )

DEMETRIO JUAN-SEBASTIAN,     )  **IMPOSITION OF SENTENCE**

7
                        )

            Defendant.   )

8
_____)

9
**PARTIAL TRANSCRIPT OF PROCEEDINGS**

10
BEFORE THE HONORABLE JAMES K. SINGLETON

11
UNITED STATES DISTRICT JUDGE

12
APPEARANCES:

13
For the Plaintiff:         RETTA-RAE RANDALL, ESQ.

                        Assistant U.S. Attorney

14
                        U.S. Attorney's Office

                        222 West 7th Avenue, #9

15
                        Anchorage, Alaska   99513-7567

                        (907) 271-5071

16

17
For the Defendant:        KEVIN MCCOY, ESQ.

                        Assistant Federal Public

18
                          Defender

                        550 West 7th Avenue, Suite 1600

19
                        Anchorage, Alaska   99501

                        (907) 646-3400

20

21
Probation Officer:        SCOTT KELLEY

                        U.S. Probation Office

                        222 West 7th Avenue, #48

22
                        Anchorage, Alaska   99513

                        (907) 271-5494

23

24
Interpreter:              PATRICIA CEPEDA

                        Interpreter Services

25
                        U.S. Courthouse - District of

                        Columbia

1    APPEARANCES (continued):

2    Court Recorder:                    DEBBY LYONS
                                        U.S. District Court
3                                       222 West 7th Avenue, #4
                                        Anchorage, Alaska   99513
4                                       (907) 677-6151

5    Transcription Service:             NODAK ROSE TRANSCRIPTS
                                        P.O. Box 1752
6                                       Bismarck, North Dakota  58502
                                        (701) 391-8861
7

8    Proceedings recorded by electronic sound recording.
     Transcript produced by transcription service.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1      ANCHORAGE, ALASKA - WEDNESDAY, JUNE 30, 2004

2      (Call to Order of the Court at 9:08 a.m.)

3      (All parties present; defendant present)

4           THE CLERK:  All rise.  His Honor the Court, the

5    United States District Court for the District of Alaska is now

6    in session, the Honorable James K. Singleton presiding.  You

7    may be seated.  Your Honor, on the line is our telephonic

8    interpreter -- is Patricia Cepeda -- I'm sorry if I've

9    pronounced that incorrectly.

10          THE INTERPRETER:  Very good.  You did very well.

11          THE CLERK:  Thank you.  She is a certified

12   interpreter in Washington, D.C., Your Honor.

13          THE COURT:  Thank you, Madam Clerk.  This is the

14   matter of <u>United States versus Demetrio Juan-Sebastian</u>, A04-

15   0028 Criminal, and the first order of business will be to swear

16   the interpreter.  Madam Clerk?

17          THE CLERK:  Yes, Your Honor.  Madam Interpreter?

18          THE INTERPRETER:  Yes, ma'am.

19          THE CLERK:  Please raise your right hand.

20      (PATRICIA CEPEDA sworn to interpret Spanish into English

21      and English into Spanish)

22          THE CLERK:  For the record, Madam Interpreter, please

23   state your full name, spelling your last name, with your

24   current court.

25          THE INTERPRETER:  My name is Patricia Cepeda,

4

1   C-E-P-E-D-A.  I am at the United States District Court in the

2   District of Columbia -- Washington, D.C.

3            THE CLERK:  Thank you, Madam Interpreter.  Your

4   Honor.

5            THE COURT:  Thank -- thank you.

6            THE INTERPRETER:  You're welcome.

7            THE COURT:  Mr. McCoy, have you had an opportunity to

8   thoroughly review the presentence report with Mr. Juan?

9            MR. MCCOY:  Yes, I have, Judge.

10           THE COURT:  And does your sentencing memorandum

11  reflect your views and his views with regard to the issues in

12  dispute here today?

13           MR. MCCOY:  Yes, with one exception, and I do need --

14  I feel obliged to raise the <u>Blakeley</u> issue in this case, and if

15  I'm invited to speak, I will.  I do, so --

16           THE COURT:  All right.  And you're, of course,

17  referring to the decision that came down last week in <u>Blakeley</u>

18  <u>versus Washington</u> --

19           MR. MCCOY:  Yes, sir.

20           THE COURT:  -- Supreme Court Number 02-1632, which

21  was decided on June the 24th, 2004.  Now in -- in looking over

22  the presentence report in this case, it appears that Mr.

23  Blakeley [sic], aside from his -- his plea to the offense of

24  being an alien in the United States after having been deported

25  without the permission of the appropriate executive branch

5

1    representative, had his sentence enhanced really for two

2    reasons.

3            Reason number one is that he is in criminal history

4    category two by virtue of past convictions, and reason number

5    two is that his sentence was enhanced by sixteen levels by

6    virtue of the fact that he had previously been convicted of a

7    -- of a drug -- felony drug trafficking offense and incurred a

8    sentence in excess of thirteen months.  Do you agree, Mr.

9    McCoy, that there are no other sentencing enhancements in the

10   case?

11           MR. MCCOY:  Yes, sir.

12           THE COURT:  All right.  So -- so your argument would

13   be that -- some -- something along the line that the U.S.

14   Supreme Court addressed this precise situation and concluded by

15   a five to four majority that having judges determine a person's

16   criminal history does not deprive a person of the rights -- his

17   jury trial rights guaranteed to him by the United States

18   Constitution, but that subsequent to that time, one of the

19   majority five in a separate -- a concurring opinion in a

20   separate case indicated that he was convinced that he had

21   reached the wrong conclusion and that the dissenting judges in

22   that case, the four judge dissenters, were correct.  So that as

23   -- as of this moment, five judges -- or justices of the U.S.

24   Supreme Court are on record as saying that that case is wrong.

25           You would concede, would you not, however, that the

6

1   U.S. Supreme Court has also said that they and they alone

2   determine when one of their earlier cases is -- is overruled

3   and that lower courts have no authority to -- no matter how

4   clear the -- the evidence -- to -- to overrule a decision of

5   the U.S. Supreme Court?  That no matter how much criticism

6   Plessy versus Ferguson got until Brown versus Board of

7   Education, it was the law of the land.

8           MR. MCCOY:  Yes, I agree.  My -- my Blakeley argument

9   is -- is fairly simple.  The statutory max in this case should

10  be determined by what he pled to, and what he pled to was

11  unlawful reentry.  If you were to apply the Blakeley analysis

12  to this case, his -- he would have a base offense level of

13  eight, he would -- reduce it by two for acceptance of

14  responsibility, that would be a total adjusted offense level of

15  six.  At category two, it would expose him to one to seven

16  months.

17          It's very clear that Almendarez-Torres conflicts with

18  that holding and it's also very clear that Apprende and

19  Blakeley talk about facts other than prior convictions.  So I

20  -- I want to be clear that I understand the conflict, but I do

21  think the analysis is right to raise in this case, and -- and

22  -- and it will at some point have to be addressed, and that's

23  the reason I do that.

24          THE COURT:  Justice Thomas, in his concurring

25  opinion, repudiated the position he had taken in Almendarez-

7

1    <u>Torres</u> some time ago.

2           MR. MCCOY:  He did.

3           THE COURT:  Have men and women who were subject to an

4    enhanced sentence by virtue of <u>Almendarez-Torres</u> -- have they

5    sought <u>certiorari</u> in the intervening time and do you know what,

6    if anything, the Supreme Court has done with that?

7           MR. MCCOY:  I have -- I know our office has raised

8    the issue as far as the Supreme Court and they have not granted

9    certain petitions from our office.  Beyond that, I have no

10   experience or information.

11          THE COURT:  Ms. Randall?

12          MS. RANDALL:  I don't know, Judge.

13          THE COURT:  Well --

14                         (Pause)

15   Does either side wish to put on any evidence?

16          MR. MCCOY:  I do not.

17          MS. RANDALL:  No, sir.

18          THE COURT:  Okay.  Well, I -- Mr. McCoy, I am -- I am

19   not sure where I would be were I on the Supreme Court deciding

20   these issues.  Congress and the President, in their wisdom,

21   have determined that -- or not determined to expose me to that

22   decision-making burden.

23          I think everyone that I have talked to, regardless of

24   where they sit on the desirability or lack of desirability of

25   presumptive and guideline sentencing, are troubled by the fact

8

1  that <u>Almendarez-Torres</u> was decided five to four, that one of

2  the judges -- justices concurring in the majority was Justice

3  Thomas, that subsequent to that time Justice Thomas has pretty

4  clearly indicated that -- that he does not adhere to the

5  position that he took in <u>Almendarez-Torres</u>, and if anything,

6  the recent <u>Blakeley</u> decision, which also was five to four --

7  and I might say cuts completely across ideological lines so

8  that -- I mean, you just have men and women disagreeing about

9  this issue, it's not part and parcel of some broader view of --

10 of justice.

11       So I think everyone is troubled by that, and I would

12 have thought that given that fact, the requisite -- I believe

13 it's four judge -- four justices have to concur -- the rule of

14 four, I think it is.  I would have assumed that four judges

15 would have concurred to take one of those cases and either

16 indicate that somebody else in addition to Justice Thomas had

17 had a change of mind so that the -- the group still stood five

18 to four, albeit a different five to four, or vote consistent

19 with currently taken positions and overrule <u>Almendarez-Torres</u>,

20 but none of those things have happened.

21       So I -- I think the only thing we can do with Mr.

22 Juan is simply to impose sentence as guided by <u>Almendarez-</u>

23 <u>Torres</u> with the understanding that one of these days the

24 Supreme Court is going to have to bite the bullet, so to speak,

25 and take -- take the case because I think it is unfortunate for

9

1   the administration of justice to have that uncertainty lying

2   out there, although I -- I would imagine someone said, well,

3   it's not an uncertainty, it's an ambiguity, but nonetheless.

4         Okay.  Now you also, however, had another theory, and

5   the other theory was the Court should knock off sixty-five days

6   on the theory that Mr. Juan ori -- initially came to the

7   attention of the authorities because on December the 20th,

8   2003, he was charged with felony assault in state court, but

9   that charge was never pursued, from which we could infer lots

10   of things, but what we could not infer was that -- is that he

11   is guilty of felony assault.

12         So your position is that the dismissal of the felony

13   assault charge would have resulted in Mr. Juan being

14   immediately free in the community but for the immigration

15   detainer, and that in the interest of justice, the Court should

16   knock off the sixty-five days prior -- between the time that he

17   was initially arrested and the time that the Marshal Service

18   take -- took custody of him, thus triggering credit under

19   federal law.  What is the position of the Government on that,

20   Ms. Randall?

21         MS. RANDALL:  Judge, I would have no objection to

22   giving Mr. Juan-Sebastian credit for -- back to the time he was

23   taken into custody by immigration, which was January 26th of

24   2004, which would be a credit, if I counted correctly, of

25   twenty-nine days.

1    The petition -- or the preliminary -- the

2 assault case was not dismissed until January 30th of 2004, and

3 there -- even though the assault caused him to come to -- to

4 the attention of immigration, there was no federal involvement

5 with him until January 26th when he was taken into custody.  So

6 I don't have a problem crediting back to that date, but I do

7 object to crediting it back to the actual day of the assault.

8    THE COURT:  Mr. McCoy?

9    MR. MCCOY:  Just a very brief response, Judge.  I

10 think that if the -- hypothetically, if -- if -- if the matter

11 had been an assault in Bethel and for some reason there was a

12 federal nexus where you could turn it into a federal assault

13 and bring it here, the -- the -- the credit for time served

14 statute would allow him credit for the assault through -- back

15 to the time -- provided the state charge was dismissed.  And I

16 just think this is an anomaly.  It's time that he served in

17 custody.  It would otherwise be uncredited time.  The reason

18 he's before this Court is because of his immigration status.

19 It seems to make sense to credit him with the full amount.

20 It's a technical argument that says he shouldn't.

21    THE COURT:  Well, except -- now -- now clearly -- I

22 think you made a good point initially.  Where someone is

23 investigated under one of these federal-state drug task forces

24 and it's really a flip of the coin as to which court he

25 ultimately is -- ends up being prosecuted in.  I would agree

11

1   with you wholeheartedly that -- that he should get the -- the

2   full credit because it was a drug case that got him into jail

3   and it's a drug case that gets him before the Court -- federal

4   court for sentencing.

5           Here, however, you have a situation where he was

6   arrested presumably by people who had no knowledge of his

7   immigration status because they had, in their view at least,

8   probable cause to believe he had committed a state offense.

9   That state offense remained pending.  If Mr. Juan was a United

10  States citizen, he would have served whatever time he served up

11  until the point in time that his state charges were dismissed,

12  at which point he would be in the community.

13          Ms. Randall correctly points out that if we give him

14  credit back to that point, he is treated exactly equally with a

15  United States citizen.

16          MR. MCCOY:  Right.  I -- I guess -- I mean, I

17  understand that argument, but I think it ignores sort of the

18  practical aspects.  One can posit a situation where prosecutors

19  look at the assault that occurs in Bethel and -- and recognize

20  it to be a weak case or recognize it to be a very defensible

21  case but still want the gentleman out of town, so they contact

22  immigration because they do suspect he has an immigration --

23  some status.  Then it takes immigration a period of time to get

24  -- to remove him from Bethel, and so the manner -- the manner

25  in which they can hold him is to hold him pending a Rule 5 on

12

1  the -- on the -- on the -- on -- on the felony assault, and

2  then when a body shows up, dismiss it, and that's what

3  happened, I think.

4        And so -- I mean, I -- I mean, there's no question

5  that Ms. Randall makes a good argument, but I think it ignore

6  -- it does ignore the practicalities of the situation.  The

7  prosecutors will frequently make decisions about how to hold

8  someone to accomplish what their end is, and that's all I'm

9  saying.

10        THE COURT:  Yeah.  But you're not suggesting that

11  there's anything in the record in this case to suggest that

12  there was any manipulative behavior.

13        MR. MCCOY:  Oh, no, no, no, no, not at all.  I -- I'm

14  -- it's just the practicality of it.  I mean, if -- if he had

15  been arrested in Anchorage, for example, it wouldn't have taken

16  the thirty days to get to bring him into federal custody.  It's

17  the -- it's the reality of him being in Bethel.  That's the

18  difference.  But I -- I -- I -- I have no information to

19  suggest anybody's trying to manipulate the system.

20        THE COURT:  Okay.  Mr. Juan, you have a very

21  important right, sir.  That is the right of allocution.  That

22  is a right to make a statement on your own behalf without being

23  under oath and without being subject to any penalty for

24  anything you might say.  The reason for that is to encourage

25  you to say anything that's on your mind without fear of any --

13

1   any sanction.  Is there anything you would like to say, sir?

2                        **DEFENDANT'S ALLOCUTION**

3                THE DEFENDANT:  Yes, Your Honor.  I did come to this

4   country to work.  I know I did not have the right because I had

5   already been deported.  I -- I always did it because I wanted

6   the best for my family because of the situation that we are

7   living under in Guatemala.  I never had any problems with any

8   authorities.  I was working in Bethel.  I was working

9   peacefully.  I was helping my family.  They've been ill and --

10  and thanks to God, I was doing very well in my work.

11               And thanks to this country, to the United States, I

12  had an opportunity to save some money to send to my country.

13  So maybe when I am deported, I can go back to my country, and

14  as soon as that happens, maybe I can have -- open up a small

15  business and not have to come back here.

16               That's all I have to say to you, Your Honor.  I would

17  please like you to have some consideration, and may God bless

18  you.

19               THE COURT:  Thank you -- thank you, Mr. Juan.  Any

20  concluding remarks, Mr. Randall?

21               MS. RANDALL:  No, sir.

22               THE CLERK:  Mr. McCoy?

23               MR. MCCOY:  No, Your Honor.  Thank you.

24  (09:27:55)

25       (This Portion Previously Transcribed)

1
2

## CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

3
4
5

*Donna K. Chertkow*                    *August 6, 2004*
Signature of Approved Transcriber                    Date

6
7

DONNA K. CHERTKOW
Typed or Printed Name

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1     UNITED STATES DISTRICT COURT **ORIGINAL**

2      DISTRICT OF ALASKA By_____Deputy

3 UNITED STATES OF AMERICA, ) Case No. A04-0028-CR (JKS)
            )
4       Plaintiff, ) Anchorage, Alaska
            ) Wednesday, June 30, 2004
5    vs.     ) 9:08 o'clock a.m.
            )
6 DEMETRIO JUAN-SEBASTIAN, ) **IMPOSITION OF SENTENCE**
            )
7       Defendant. )
            )
8 ————————————————————————)

9      **PARTIAL TRANSCRIPT OF PROCEEDINGS**

10    BEFORE THE HONORABLE JAMES K. SINGLETON
      UNITED STATES DISTRICT JUDGE

11 APPEARANCES:

12

13 For the Plaintiff:    RETTA-RAE RANDALL, ESQ.
            Assistant U.S. Attorney
            U.S. Attorney's Office
14            222 West 7th Avenue, #9
            Anchorage, Alaska 99513-7567
15            (907) 271-5071

16 For the Defendant:    KEVIN MCCOY, ESQ.
            Assistant Federal Public
17             Defender
            550 West 7th Avenue, Suite 1600
18            Anchorage, Alaska 99501
            (907) 646-3400
19

20 Probation Officer:    SCOTT KELLEY
            U.S. Probation Office
21            222 West 7th Avenue, #48
            Anchorage, Alaska 99513
22            (907) 271-5494

23 Interpreter:      PATRICIA CEPEDA
            Interpreter Services
24            U.S. Courthouse - District of
             Columbia

25



APPEARANCES (continued):

1

2   Court Recorder:                    DEBBY LYONS
                                       U.S. District Court
3                                      222 West 7th Avenue, #4
                                       Anchorage, Alaska   99513
4                                      (907) 677-6151

5   Transcription Service:             NODAK ROSE TRANSCRIPTS
                                       P.O. Box 1752
6                                      Bismarck, North Dakota  58502
                                       (701) 391-8861
7

8   Proceedings recorded by electronic sound recording.
    Transcript produced by transcription service.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1            ANCHORAGE, ALASKA - WEDNESDAY, JUNE 30, 2004

 2        (Call to Order of the Court at 9:08 a.m.)

 3        (All parties present; defendant present)

 4        (This Portion Not Requested)

 5   (09:27:55)

 6                    IMPOSITION OF SENTENCE

 7        THE COURT:  All right.  Well, I'm going to give you

 8   sixty days, Mr. McCoy -- two months.  Mr. -- Mr. Juan is in a

 9   criminal history category of two and a total offense level of

10   twenty-one.  He's vulnerable to a forty-one to fifty-one-month

11   sentence.  We'll knock off two months and that'll make that

12   thirty-nine to fifty-one -- well, actually --

13                         (Pause)

14   Hmm.

15                         (Pause)

16   Okay.  This must have been under -- oh, no, there we are.

17                         (Pause)

18        Okay.  I'll give him -- I'll -- I'll knock off two

19   months -- sixty days -- move him down to thirty-nine months.

20   Nobody suggests he should -- well, actually, I shouldn't say

21   that.  The probation officer suggests that a maximum of fifty-

22   one-month sentence; however, I'm going to go ahead and sentence

23   to the thirty-nine months.

24        Mr. Juan, the -- the probation officer recommended a

25   significantly increased sentence because he's convinced you're
```

US MARSHAL

4

1   going to come right back across the border the minute you're --

2   you're free to do so.  I don't know what the law is going to be

3   like then, but you know, I -- it's hardly in your family's best

4   interests for you to do life imprisonment in installments, so

5   my hope is that the probation officer is -- is incorrect and

6   that this time you will elect to remain in your country and

7   take care of your family there, but only you, of course,

8   control your future.

9          Supervised release is two to three years, the

10  probation officer recommends three years, I accept that.  I

11  think that will give a reasonable period of time after Mr. Juan

12  is returned to his country of origin to monitor him should he

13  return.  Probation is not authorized.

14         The fine is maximum two hundred and fifty thousand,

15  range of six thousand to sixty thousand.  The Court will not

16  impose a fine, concluding in conformity with the presentence

17  report that Mr. Juan does not have the ability to pay a fine

18  and meet his obligations to his dependents.  No restitution is

19  applicable.  There's a hundred-dollar special assessment.

20         The Court is going to suspend all conditions of

21  supervised release during the three-year period, Mr. Juan, if

22  you are not within the United States.  If you are within the

23  United States, the Court would impose certain conditions.  Now

24  part of these conditions are typical and are automatically

25  included in the judgment of conviction.  Some are not.

US MARSHAL

5

1    The Court does conclude that there is a risk of

2 future drug or alcohol dependency and, therefore, within

3 seventy-two hours of your release from the custody of Bureau of

4 Prisons, assuming you're in this country, you shall report in

5 person to your probation officer in the district in which you

6 are released.  You shall be required to submit to at least two

7 periodic drug tests after your release.

8    And the Court would -- again, only if you are in the

9 United States -- require you to participate in inpatient or

10 outpatient drug treatment programs at the direction of your

11 probation officer.

12    The Court would require that you comply with all the

13 rules and regulations of the Bureau of Immigration and Customs

14 Enforcement.

15    And if you are deported, either voluntarily or

16 involuntarily, that you not reenter the United States

17 illegally.  Upon any reentry into the United States during the

18 period of court-ordered supervision, you must report to your

19 probation officer.

20    And as in all cases of violation of the immigration

21 laws, there is the potential that a person intent on so doing

22 would have on his person or in his residence counterfeit proof

23 of residency or citizenship.  You shall submit to a warrantless

24 search of your person, residence, vehicle, office, place of

25 employment and/or business at reasonable times in a reasonable



6

1  manner based upon a reasonable suspicion that contraband or

2  evidence of a violation of a condition of release would be

3  found on the premises to be searched.  Failure to submit to a

4  search may be grounds for revocation.

5        You shall not possess a firearm, destructive device,

6  or other weapon.

7        The Court would reiterate that it finds that Mr. Juan

8  does not have the ability to pay a fine.  The Court will impose

9  the hundred-dollar special assessment.

10       Ms. Randall, the special assessment is mandatory;

11  however, on occasion the U.S. Attorney's Office waives it in

12  the case of deportable men and women who are convicted of

13  offenses on the theory that aliens are not permitted to work in

14  federal prison, so they can't earn any money there, and they go

15  across the border immediately when they're release -- almost

16  immediately -- and that the cost of attempting to collect

17  money, particularly as small an amount as a hundred dollars,

18  would not pay dividends.  Do you have a position on that?

19       MS. RANDALL:  No, sir.  I'm not familiar that

20  anyone's ever dismissed it within my office, so I'd rather not

21  start that now.

22       THE COURT:  Okay.  Well, I -- it -- I think the

23  hundred-dollar special assessment is probably --

24       MR. MCCOY:  I know the Court has waived it in the

25  past --



US MARSHAL

7

1          THE COURT:  I know.

2          MR. MCCOY:  -- upon application of the defense.

3          THE COURT:  Yeah.  They do it virtually all the time

4   in San Diego, but -- oh, I -- I think it doesn't make much

5   sense, but I'll leave it in there.

6          Mr. Juan, I don't know whether -- well, what -- what

7   arrangement, if any, did Mr. Juan make with regard to his

8   appellate rights in -- in the plea in this case?

9          MR. MCCOY:  This was a straight-up plea, Your Honor,

10  so he's -- all of his rights have been preserved.

11         THE COURT:  Very well.  Mr. Juan, you have right to

12  appeal both your sentence and your conviction.  The significant

13  thing is that any appeal must be filed within ten days of

14  today, and you can challenge your sentence or -- or conviction

15  on any grounds that are meaningful to you.  Mr. McCoy, may I

16  rely on you to file a notice on Mr. Juan's behalf?

17         MR. MCCOY:  Yes, Your Honor.  If Madam Interpreter

18  would advise him, I'll be out to the jail tomorrow to see him

19  with an interpreter to discuss that.

20         THE COURT:  Very well.

21         THE INTERPRETER:  Yes, I will advise.

22         MR. MCCOY:  Thank you.

23         THE COURT:  Excellent.  Is there anything further

24  from the Government at this time?

25         MS. RANDALL:  No, sir.  Thank you.

8

1          THE COURT: Mr. Kelley?

2          THE PROBATION OFFICER: No, Your Honor.

3          THE COURT: Mr. McCoy?

4          MR. MCCOY: No, Your Honor. Thank you.

5          THE COURT: Very well. We'll stand at ease. You may

6     be excused. I'm going to fill out a form -- if I can find the

7     form.

8          THE CLERK: All rise. This matter is now adjourned.

9     This Court stands in brief recess until 11:00 a.m.

10         (Proceedings concluded at 9:35 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**CERTIFICATE**

2

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-

3

entitled matter.

4

5

*Donna K. Chertkow*                    *July 14, 2004*
Signature of Approved Transcriber                    Date

6

7

DONNA K. CHERTKOW
Typed or Printed Name

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**NoDak Rose Transcripts**
*P.O. Box 1752*
*Bismarck, North Dakota  58502-1752*
*(701) 391-8861*

K. KABDADB
US MARSHAL